CREMEANS ET AL., APPELLEES, *v.*
INTERNATIONAL HARVESTER COMPANY ET AL., APPELLANTS.

[Cite as Cremeans *v.* International Harvester Co. (1983), 6 Ohio St. 3d 232.]

(No. 82-1074—Decided August 17, 1983.)

*Messrs. Pees & Behal* and *Mr. Randall W. Pees,* for appellees.

*Messrs. Vorys, Sater, Seymour & Pease, Mr. Herbert R. Brown, Ms. Sandra J. Anderson* and *Mr. William A. Klatt,* for appellants.

WILLIAM B. BROWN, J. The issue presented by this appeal is whether a motion for summary judgment pursuant to Civ. R. 56 should have been granted to appellants on the grounds that the appellants had violated no duty in the manufacturing and selling of a crawler-type tractor without roll-over protection. For the reasons which follow, this court holds that the grant of summary judgment was improper, for there was sufficient evidence presented to raise a question of fact as to whether the design of the tractor without roll-over protection was in a defective condition.

In recent years, this court has had several opportunities to define the duties of a manufacturer relative to product design. In the seminal case of *Temple* v. *Wean United, Inc.* (1977), 50 Ohio St. 2d 317 [4 O.O.3d 466], this

court adopted Section 402A of the Restatement of Torts 2d, thus providing a cause of action in strict liability for injury from a product in Ohio. This court recently elaborated on the basic principles set forth in *Temple* in *Leichtamer* v. *American Motors Corp.* (1981), 67 Ohio St. 2d 456 [21 O.O.3d 285], and *Knitz* v. *Minster Machine Co.* (1982), 69 Ohio St. 2d 460 [23 O.O.3d 403].

In *Knitz,* this court set forth the proper legal standard to be applied in cases alleging a design defect in a manufactured product which causes injury:

"A product design is in a defective condition if it is more dangerous than an ordinary consumer would expect when used in an intended or reasonably foreseeable manner or if the benefits of the challenged design do not outweigh the risk inherent in such design. * * *"

The test set forth in *Knitz* does not impose a dual requirement that an injured plaintiff prove that a product design is both in a defective condition and unreasonably dangerous. As this court aptly noted in *Knitz,* at page 464, fn. 2, "* * * [t]o require an injured plaintiff to prove both that a product contained a defect and that the defect rendered the product 'unreasonably dangerous' would place a greater requirement upon him than required by * * * [this court's] initial formulation of strict liability in tort announced in *Lonzrick* v. *Republic Steel Corp., supra* [(1966), 6 Ohio St. 2d 227 (35 O.O. 2d 404)]. * * *"

Rather, *Knitz* sets forth a single, two-pronged test for determining whether a product design is in a defective condition. Under the first prong, commonly referred to as the consumer expectation standard, a defendant will be subject to liability if the plaintiff proves that the product design is in a defective condition because the product fails to perform as safely as an ordinary consumer would expect when used in an intended or reasonably foreseeable manner.

Under the second prong, a defendant will be subject to liability if the plaintiff proves, by using relevant criteria, that the product design is in a defective condition because the benefits of the challenged design do not outweigh the risks inherent in such design. This standard is often referred to as the risk-benefit standard.

In *Knitz,* at page 466, this court listed three criteria that it deemed relevant in weighing the merits of a particular design: "* * * the likelihood that the product design will cause injury, the gravity of the danger posed, and the mechanical and economic feasibility of an improved design." The listing of these three factors was not meant to be, nor should it be construed to be, exclusive and exhaustive.

For, as this court stated in *Knitz,* at 465, fn. 2, the focus of our inquiry in determining whether a particular product design is in a defective condition under the risk-benefit standard is on "* * * the nature of [the] 'defect' * * *."[1] In focusing on the product design, basic justice requires that all par-

---

[1] Justice Prager, dissenting in *Lester* v. *Magic Chef, Inc.* (1982), 230 Kan. 643, 654, 641 P. 2d 353, noted, at page 658, the advantages of a test which focuses on the product:

ties have the right to have attention directed to all relevant factors for consideration in determining whether the particular product is in a defective condition. Other factors relevant to the evaluation of the defectiveness of the product design may include the relative costs of producing, distributing and selling an alternative design and new or additional harms that may result from an alternative design.[2]

As this court refrains from setting forth an exclusive test of relevant factors, it likewise refrains from according any priority to these factors. The appropriate factors, and the weight allocated to each factor, will vary with the facts of each case.[3]

Applying these standards to the instant case, while remaining mindful that this case involves the grant of summary judgment and that the evidence must thus be construed most favorably for appellees herein, this court concludes that appellees have made out a genuine issue of fact as to whether appellants' crawler tractor was defective in design. This court concurs with the conclusion of the court of appeals that there were sufficient allegations in the pleadings and depositions to establish a genuine issue of material fact as to whether the benefits of the challenged design outweighed the risks inherent in such design.

The deposition of appellee indicates that it was dangerous not to have a roll bar on the crawler tractor and that several models had such equipment. John A. Prosek, an engineer and former employee of International Harvester, who was involved with the design of roll-over protection, stated in his deposition that the company was aware that errors in judgment while using the equipment could result in roll-over accidents, that federal regulations requiring roll-over protection were being formulated at the time of manufacture of the crawler tractor, that it would have cost approximately $1,000 per

"* * * This test has been denominated the 'risk-utility balancing' test by some commentators and the 'excessive preventable danger' test by others. No matter what the test may be called, it is based on the legal duty of a manufacturer to provide a reasonably safe *product*. The substantive idea underlying the risk-utility balancing test, as a basis for a finding of defective design, is that a product is defective when designed in a particular way if the risk or danger inherent therein outweigh the benefits. The attractiveness of this charge is attributable to the fact that it directs the attention of attorneys, trial judges, and juries to the necessity of weighing the danger inherent in a particular design against its utility. It is based upon the rationale that the only way to ascertain whether or not a product design is good or bad is to inquire about the danger inherent in it and the justification for this danger." (Emphasis *sic*.)

[2] These factors are included within the proposed model Uniform Product Liability Act. 230 Kan., at 659.

[3] Dean Wade has suggested that not every factor will be appropriate in every lawsuit but has recognized that, where a factor is significant, a jury should be so informed. Wade, On the Nature of Strict Tort Liability for Products (1973), 44 Miss. L.J. 825, 837-841, and more recently in Wade, On Product "Design Defects" and Their Actionability (1980), 33 Vanderbilt L. Rev. 551, 572-573.

tractor to install roll-over protection, and that a marketing decision was made to offer the protection as an option.[4]

Appellants also argue that even if this court holds that the trial court improperly granted summary judgment on the issue of the alleged defective condition of the product design, this court should nevertheless reinstate summary judgment in their favor by ruling that appellee voluntarily assumed the risk of his injury. In this regard, the court of appeals stated as follows: "[i]t is not necessary to consider the issues of contributory negligence and assumption of the risk, since the trial court did not grant summary judgment on these grounds and the issues were not raised on appeal."

This court concurs in this assessment made by the court of appeals. Inasmuch as the issue of assumption of the risk was not properly before the court of appeals, it likewise is not properly before this court.

For the foregoing reasons, the judgment of the court of appeals is affirmed.

*Judgment affirmed.*

CELEBREZZE, C.J., SWEENEY, LOCHER, C. BROWN and J. P. CELEBREZZE, JJ., concur.

HOLMES, J., dissents.

HOLMES, J., dissenting. The majority of this court continues to rush onward in its search for new avenues or theories of recovery for claimants, and where no such avenues or theories are found to be in existence, new ones are ploughed to suit the needs of the claim at issue.

On the facts of this case, International Harvester violated no duty to these plaintiffs in manufacturing and selling a crawler-type tractor without roll-over protection. The tractor involved here which had been designed without roll-over protection was not in a defective condition. The majority here extends the legally illogical and harsh result of *Knitz* v. *Minster Machine Co.* (1982), 69 Ohio St. 2d 460 [23 O.O.3d 403], which had gone beyond the application of strict liability for manufacturers established by this court in *Lonzrick* v. *Republic Steel Corp.* (1966), 6 Ohio St. 2d 227 [35 O.O.2d 404]. By this holding it would appear that we are at, if not over, the threshold of *absolute,* rather than strict, liability for manufacturers of products used in Ohio.

First, it would have been appropriate for the trial court to have granted

---

[4] Having found that summary judgment was improper for there was sufficient evidence presented to raise a question of fact for the jury as to whether the risk inherent in the tractor's design outweighed the benefits of the challenged design, it is unnecessary for this court to also consider whether the product design was in a defective condition under the consumer expectation standard.

appellants' motion for summary judgment based upon the plaintiff's clear assumption of the risks involved under the circumstances. However, this issue was not appealed by appellants.

Even applying the highly questionable tests as set forth in *Knitz* to the facts in this case, it was appropriate for the trial court to have entered a summary judgment here for the appellants. First, the court of appeals correctly noted in its opinion that:

"Cremeans' deposition shows that he had been in the construction business most of his life. He had driven bulldozers and other heavy equipment since the 1950's and had operated the machine involved in this case since 1971. He was aware at the time of the accident that the machine was on a slope grade and that it was dangerous to load on such conditions. He conceded that the ordinary operator would be aware of this circumstance. Furthermore, Cremeans knew the machine did not have a roll-bar and it would have been safer if such equipment was included.

"Therefore, reasonable minds could only conclude that Cremeans was aware of the dangers involved in the absence of a roll-bar. Thus, if there was a defective condition, reasonable minds could not conclude that it was no more dangerous than Cremeans or an ordinary user would expect. * * *"

From that point, the court of appeals' opinion, and the majority opinion here, leaves we earthlings and transcends the horizon in finding that there were genuine issues of fact presented as to whether "the benefits of the challenged design do not outweigh the risks inherent in such design."

There was no evidence presented to the trial court that the bulldozer operated by Cremeans was defectively manufactured or designed. There was no statute, regulation or other standard in effect at the time this bulldozer was manufactured that required the use of roll-over protective devices or structures. In regulations effective September 1, 1972, the Federal Occupational Safety and Health Administration ("OSHA"), for the first time, made it mandatory for employers to provide roll-over protective structures for certain equipment, including crawler tractors or bulldozers. These regulations do not apply to manufacturers, and in any event would not apply to this bulldozer which was constructed in 1970.

Additionally, this case, upon its facts, should logically be differentiated from *Knitz*. In that case, the plaintiff offered evidence submitted by two expert witnesses that the punch press in question was defectively designed. The opinion accordingly states, at page 467:

"* * *[A]ppellant provided an affidavit of James J. McCarthy, a former safety engineer for General Motors Corporation, involved with analysis of machine accident potential. McCarthy's affidavit states, *inter alia,* that in his opinion the press is defective 'because of inadequate guarding at the point of operation caused by failure to attach a barrier or interlock gate guard to prevent entry of the operator's hands into the danger area while the ram is descending * * * the press is defective because of inadequate guarding of the foot pedal of the foot switch to prevent inadvertent entry and tripping.'

"Appellant also offered the deposition of Simon Tammy, a mechanical engineer, in which he testified that the foot switch creates unique hazards which should be prevented by use of a point of operation guard. * * *"

In the case *sub judice,* however, the appellees have presented no evidence beyond the testimony of Cremeans that he was injured while operating a bulldozer under circumstances which he recognized as dangerous. Such an allegation requires that some expert testimony be presented in order to create a genuine issue of material fact under Civ. R. 56(C). If the law were otherwise, summary judgment for a defendant would never be possible since the plaintiff need only assert that a given product is defectively designed and that he was injured by it. Nor does the appellees' allegation of an inapplicable OSHA standard create a genuine issue of material fact sufficient to overcome a motion for summary judgment.

Therefore, I conclude that where no relevant evidence, expert or otherwise, of a design defect has been presented, a manufacturer or supplier is entitled to summary judgment as a matter of law. The majority herein, however, believes otherwise and in so doing speaks of its theory of the liability of manufacturers in terms of a nebulous two-pronged test. I am not certain in reading the opinion how many prongs are presented by this theory, but I am convinced that all such prongs inherent in this pronounced rule are thrust with vigor and finality into the vitals of the manufacturers whose products are used in this state, with the pointed message for such manufacturers being that *absolute* liability is now the judicial order of the day in Ohio.