880 F.2d 414
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Rebecca Jean AULT, individually and as Executrix of the
Estate of David Lynn Ault and on behalf of the
surviving relatives of David Lynn Ault,
Plaintiff-Appellee/Cross-Appellant,
v.
NAVISTAR INTERNATIONAL TRANSPORTATION CORPORATION, aka
International Harvester Company,
Defendant-Appellant/Cross-Appellee.
 Nos. 88-3469, 88-3497.
 United States Court of Appeals, Sixth Circuit.
 July 31, 1989.
 
 Before KENNEDY, RALPH B. GUY, Jr. and ALAN E. NORRIS, Circuit Judges.
 RALPH B. GUY, Jr., Circuit Judge.
 
 
 1
 Defendant Navistar International Transportation Corporation (Navistar) appeals the district court's refusal to grant judgment notwithstanding the verdict (JNOV) or a new trial in a wrongful death action filed by plaintiff Rebecca Jean Ault on behalf of her deceased husband, David Ault. Plaintiff cross appeals the district court's refusal to grant her prejudgment interest. We shall affirm the district court's rulings.
 
 
 2
 This diversity action for wrongful death arose out of a single vehicle tractor trailer accident that occurred on a Toledo highway on September 4, 1984. David Ault was travelling southbound along the highway in a 1978 Transtar 4300 tractor truck (the Transtar or tractor), an aluminum-cabbed, three-axle vehicle, manufactured by the International Harvester Company.[1] The tractor was pulling a tanker trailer containing liquid asphalt. While traveling at approximately forty-five miles per hour, Ault apparently caused the tractor to stray completely off the highway and onto the right shoulder of the road. Ault maneuvered the vehicle back onto the road but the trailer rolled over and subsequently flipped or rolled the tractor upside down into the ground, crushing its roof and trapping Ault, while the tractor slid thirty to fifty feet along the ground. The accident occurred in front of a police station and medical attention was prompt. Although emergency technicians allegedly detected a pulse in the trapped driver, he was pronounced dead when his body was removed. The coroner attributed Ault's death to "asphyxia due to compression of the chest." Other than his asphyxiation due to chest compression, Ault suffered only minor injuries. The only damage to the tractor was the total destruction of its cab. In fact, nearly all other parts of the tractor remained intact and were salvaged for other vehicles.
 
 
 3
 On June 17, 1986, Ault's widow filed a wrongful death action against defendant, pursuant to Ohio Rev.Code Ann. Sec. 2125.01 et seq., alleging that the tractor's cab and roof design were defective, breach of warranty, and negligence.[2] Navistar contested its liability and the case proceeded to a jury trial in January 1988. After Navistar's motions for a directed verdict were denied, the jury found for Ault's widow and awarded her $600,000. The district court entered judgment on the verdict and subsequently denied plaintiff's motion for pre-judgment interest and Navistar's motion for JNOV or a new trial, which prompted the present appeal and cross-appeal.
 
 I.
 
 4
 In reviewing a district court's refusal to grant JNOV, "[a] federal court exercising its diversity jurisdiction applies the standard of the state whose substantive law governs the action...." O'Neal v. Burger Chef Systems, Inc., 860 F.2d 1341, 1347 (6th Cir.1988). In this case, Ohio law controls because the accident occurred there. See Sours v. General Motors Corp., 717 F.2d 1511, 1513-14 (6th Cir.1983) (citing Erie R.R. Co. v. Tompkins, 304 U.S. 64 (1938)). The standard for granting a JNOV in Ohio is the same standard applicable to a motion for a directed verdict. The evidence must be "construed most strongly in favor of the party against whom the motion is made, and, where there is substantial evidence to support his side of the case, upon which reasonable minds may reach different conclusions, the motion must be denied." Posin v. A.B.C. Motor Court Hotel, Inc., 45 Ohio St.2d 271, 275, 344 N.E.2d 334, 338 (Ohio 1976). Ruling on such motions does not entail weighing evidence or making credibility determinations. Id. We review a district court's refusal to grant a new trial under the abuse of discretion standard, National Polymer Prods., Inc. v. Borg-Warner Corp., 660 F.2d 171, 178 (6th Cir.1981). With these standards in mind, we turn to Navistar's allegations of error.
 
 
 5
 Navistar first claims that the district court improperly denied its motion for JNOV because Ault's widow failed to demonstrate that a safer, practical, alternate design exists or that David Ault's enhanced injuries were causally related to the alleged design defect. Navistar also contends that plaintiff's evidence indicating that the accident was survivable absent the design defect should not have been admitted. Finally, Navistar claims that because the jury's verdict was against the great weight of the evidence, the district court abused its discretion in refusing to grant a new trial.
 
 
 6
 In this case, plaintiff does not allege that the purported design defect in the cab and roof structure of the Transtar caused David Ault's accident. Accordingly, plaintiff's cause of action falls within the "second collision" doctrine,[3] under which plaintiff seeks to hold Navistar liable for injuries enhanced by the design defect in the Transtar in which Ault was driving when the accident occurred. See Leichtamer v. American Motors Corp., Ault was driving when the accident occurred. See Leichtamer v. American Motors Corp., 67 Ohio St.2d 456, 424 N.E.2d 568 (Ohio 1981). Ohio recognizes this doctrine. "[A] cause of action for damages for injuries 'enhanced' by a design defect will lie in strict liability in tort." Id. at 467, 424 N.E.2d at 577. In Leichtamer, the court noted that although a manufacturer is not obligated to create a crash-proof vehicle, id. at 465, 424 N.E.2d at 575-76 (citing Larsen v. General Motors Corp., 391 F.2d 495 (8th Cir.1968)), a cause of action for strict liability in tort may lie if the plaintiff establishes that an unreasonably dangerous product design proximately caused or enhanced plaintiff's injuries during the plaintiff's foreseeable use of the product. Id., 424 N.E.2d at 576 (citing Dyson v. General Motors Corp., 298 F.Supp. 1064 (E.D.Pa.1969)).
 
 
 7
 Although the Leichtamer court recognized a cause of action for enhanced injuries due to a design defect in a second collision, Navistar claims that the court did not set forth a sufficiently explicit standard for proving liability for such injuries. Rather, the court merely stated: "In order to recover, the plaintiff must prove by a preponderance of the evidence that the 'enhancement' of the injuries was proximately caused by a defective product unreasonably dangerous to the plaintiff." Id. at 467, 424 N.E.2d at 577. The present dispute largely focuses on the sufficiency of plaintiff's proofs to establish Navistar's liability. This issue turns on which line of cases Ohio follows or would follow for proving enhanced injuries.
 
 
 8
 Navistar claims that Ohio courts would follow the principles of Huddell v. Levin, 537 F.2d 726 (3d Cir.1976), and, in so doing, would find plaintiff's proofs inadequate. In Huddell, decedent's widow brought a wrongful death action based on strict liability against the manufacturers of a 1970 Chevrolet Nova for enhanced injuries allegedly caused by a defective headrest when the vehicle was disabled on the highway and struck from the rear by a vehicle travelling at least fifty miles per hour. Plaintiff's decedent suffered only superficial injuries with the exception of an extensive fracture to his skull that occurred when his head struck the head restraint. The blow led to his death the next day. The Huddell court indicated that in second collision cases based on a vehicle's design defects, the plaintiff has a heavy burden of proof:
 
 
 9
 1) [I]n establishing that the design ... was defective, the plaintiff must offer proof of an alternative, safer design, practicable under the circumstances.
 
 
 10
 2) [T]he plaintiff must offer proof of what injuries, if any, would have resulted had the alternative, safer design been used.
 
 
 11
 3) [A]s a corollary to the second aspect of proof, the plaintiff must offer some method of establishing the extent of enhanced injuries attributable to the defective design.
 
 
 12
 Huddell, 537 F.2d at 737-38.[4] Because the plaintiff in Huddell failed to sustain her burden, the court of appeals overturned the jury's verdict for plaintiff and remanded the case for a new trial. The court rejected the proposition that a wrongful death action converts limited, second collision liability for enhanced injuries into liability for the full consequences of an accident that the manufacturer did not instigate. Id. at 739. Navistar claims that plaintiff's proofs here are similarly inadequate because her proffered alternative design was created by an expert on the morning of his deposition, was not shown to be practical, and was not tested. Further, Navistar claims that plaintiff failed to establish what injuries Ault would have sustained with the alternative design in place or that the design defect was the sole cause of Ault's death.
 
 
 13
 Plaintiff claims that Huddell does not and should not control the outcome of this case, noting several cases, particularly in the context of wrongful death, in which Huddell has been criticized extensively and/or rejected. For example, in Fox v. Ford Motor Co., 575 F.2d 774 (10th Cir.1978),[5] two passengers died in a car following a head-on collision with a pickup truck. The evidence was deemed sufficient to establish that the deaths were proximately caused by various design defects, particularly in the seat belts, in the vehicle. The court rejected Huddell's requirements for proving enhanced injuries and followed the doctrine of joint liability of concurrent tortfeasors, in which defendants ordinarily would have the burden of apportioning damages once the plaintiffs established that the defects were the proximate cause of the passengers' deaths. In Fox, however, noting the absence of evidence regarding the extent of damage that would have occurred if the passengers had survived, the court concluded that death is an indivisible injury in which apportionment is both impossible and inappropriate. Although the Fox court recognized that a defendant's liability for enhanced damages in a second collision case is generally limited to those damages within the sphere of risk created by the defendant, and although damages in such cases are normally apportioned between two causes if there are distinct harms, or if there is a reasonable basis for ascertaining the causes of injury, the court concluded that death precluded apportionment of damages. Moreover, the apportionment issue in Fox was deemed moot because the defendant was shown to be responsible for the passengers' deaths. Plaintiff also claims that here, as in Roe v. Deere and Co., 855 F.2d 151 (3d Cir.1988), there is sufficient evidence in the record for the jury to ascertain Ault's enhanced injuries, without expert testimony on the subject.
 
 
 14
 In addition to citing cases rejecting Huddell, plaintiff claims that the Ohio Supreme court has rejected Huddell. Plaintiff claims that in Leichtamer, Navistar's current counsel represented American Motors and urged the supreme court to adopt the Huddell standard in evaluating a claim for damages for serious injuries to occupants of a jeep that flipped over. The occupants claimed that their injuries were enhanced by a defectively designed roll bar that provided inadequate protection during the accident. They did not submit evidence that would satisfy the Huddell standard. Nevertheless, the Ohio Supreme Court, without explicitly mentioning Huddell, employed the previously quoted proximate cause standard and affirmed a jury verdict for plaintiffs based on evidence of enhanced injury attributable to the roll bar. The proximate causation standard, applied in Leichtamer in the context of severe injuries as opposed to death, is consistent with the standard employed by other cases rejecting the stringent requirements of Huddell. See, e.g., Fox, 575 F.2d 774; see also Shipp v. General Motors Corp., 750 F.2d 418 (5th Cir.1985) (plaintiff in second collision case need only prove that design defect was one producing cause of injury); Mitchell v. Volkswagenwerk, AG, 669 F.2d 1199 (8th Cir.1982) (paraplegic injury in second collision case is indivisible and incapable of apportionment; plaintiff need only show design defect was substantial factor in producing injury).
 
 
 15
 We decline to hold that the Ohio Supreme Court has expressly rejected Huddell, but also decline to expand the proof requirements set forth in Leichtamer to encompass those articulated in Huddell in the context of a wrongful death case. Thus, the jury's verdict is proper if the plaintiff established by a preponderance of the evidence that Ault's enhanced injury; i.e., death, was proximately caused by an unreasonably dangerous, defective product. The Leichtamer court explained that a product is unreasonably dangerous when its danger extends "beyond the expectations of an ordinary consumer when used in an intended or reasonably foreseeable manner." 67 Ohio St.2d at 467, 424 N.E.2d at 577.
 
 
 16
 In Cremeans v. Int'l Harvester Co., 6 Ohio St.3d 232, 452 N.E.2d 1281 (Ohio 1983), the court elaborated further on how to establish that a product design is defective. The court indicated that a two-pronged test should be employed. The first prong is the consumer expectation standard, which we have previously described in discussing Leichtamer. The other prong is the risk benefit standard, under which a plaintiff must show that the benefits of the challenged design do not outweigh the risks inherent in such a design. This risk benefit test was set forth in Knitz v. Minster Machine Co., 69 Ohio St.2d 460, 432 N.E.2d 814, cert. denied sub nom. Cincinnati Milacron Chemicals, Inc. v. Blankenship, 459 U.S. 857 (1982), and encompasses consideration of such factors as the " 'likelihood that the product design will cause injury, the gravity of the danger posed, and the mechanical and the economic feasibility of an improved design.' " Cremeans at 234, 452 N.W.2d at 1284 (quoting Knitz, 69 Ohio St.2d at 466, 432 N.E.2d at 818). The Cremeans court indicated that other considerations include "the relative costs of producing, distributing and selling an alternative design and new or additional harms that may result from an alternative design." Id. at 235, 452 N.E.2d at 1284 (footnote omitted). The Cremeans court also indicated that the appropriate factors for consideration and their respective weight varies with the facts of each case. Id.
 
 
 17
 In Sours v. General Motors Corp., 717 F.2d 1511, we had occasion to consider Ohio's product liability laws. In that case, we noted that the risk benefit test is employed as an alternate to the consumer expectation test in cases in which a product fulfills ordinary consumer expectations but, nonetheless, embodies excessive and preventable danger such that consumer expectation is of little guidance. Sours, 717 F.2d at 1515 (construing Knitz ). Although Ault's widow's claim alleged that the Transtar's roof was defective under the consumer expectation standard and the risk benefit standard, the jury was only instructed, over plaintiff's protests, on the risk benefit standard.[6] The plaintiff contended that Navistar failed to provide roll-over protection to occupants of the Transtar and that the cab and roof components of that vehicle, as designed, offered inadequate protection in roll-over accidents. Moreover, plaintiff put forth expert testimony on the dangerousness of the cab's roof as designed by Navistar, and on the feasibility of an alternate design. The evidence also indicated that the roof, as designed, was not tested for roll-over protection, notwithstanding the fact that Navistar was aware that 500--2,000 fatal roll-over accidents occur annually and that its tractors might be involved in such accidents. The plaintiff also put forth evidence that the cause of David Ault's death was "asphyxia due to compression of the chest," and that the only other injuries sustained by him in the accident were minor. Plaintiff's expert testified that the chest compression was due to Ault's impingement following the collapse of the roof of the Transtar. It is not disputed that the roof of the cab collapsed on impact, crushing David Ault. Under the standards discussed in Leichtamer, Cremeans, and Sours, the jury was free to find by a preponderance of the evidence that the Transtar roof, as designed, was likely to cause life threatening or fatal injuries in roll-over accidents, and that this is precisely what occurred in David Ault's case.
 
 
 18
 With respect to the availability of an alternate design, plaintiff relies on the testimony of Harley Copp, a design expert and former vice president of the Ford Motor Company.[7] Copp verified that he familiarized himself with the Ault accident via the accident report and photographs taken before the truck was destroyed. He then examined an intact truck similar to the one involved in the accident and various drawings provided by Navistar. (App. 366-67). He took various photos of the similar truck and its parts, including some with himself behind the steering wheel. His evaluation indicated that the roof structure on the Transtar involved in the accident was nothing more than a weather encasement that was incapable of offering any protection in a roll-over accident. He testified that the inadequacy of the roof to offer vertical force protection would be obvious to an engineer without any tests assessing the amount of force the truck would withstand. He indicated that, although a lay person would perceive the roof as substantially secure, an engineer could immediately recognize its propensity to collapse upon vertical force impact. Copp indicated that inserting a roll cage (a device used on utility vehicles) or combining the equivalent strength of a roll cage into the basic structure would have offered Ault survival space during his accident. (App. 372). He indicated that this protection would add about 115 pounds to the truck at a cost, at the time of the accident, of about $115. Copp sketched his proposed alternate structure for the jury and explained how it resists force in an accident. Navistar challenged Copp's proposed alternate design as untested[8] and as first put to paper just prior to his deposition. Navistar claims the design was not shown to be practicable or effective in preventing such injuries as sustained by David Ault. Moreover, Navistar claimed that Copp's cost projections did not include the cost of incorporating the design change into producing or marketing the tractor. Navistar did not offer cost projections to substantiate its claim that the design was not economically feasible. Navistar did establish, however, that the proposed design could limit driver visibility, create another hard surface in the cab's interior against which Ault could have been thrown, and increase vibration while operating the tractor. Navistar claims that because plaintiff failed to establish a technically and economically feasible safer alternative design, its motion for JNOV should have been granted. We disagree. Both Ault's widow and Navistar presented expert testimony of the benefits and detriments to the proposed alternate design. As might be expected, the experts' testimony was in conflict. It is the province of the jury to evaluate and weigh such competing evidence as the benefits and risks of Navistar's chosen design and the proposed alternative design. Construing, as we must, the evidence most favorably to Ault's widow, we cannot say that there is a lack of substantial evidence supporting her side of the case. Moreover, we find no error in the standard by which the jury was instructed to assess Navistar's liability for damages. Accordingly, the district court properly denied Navistar's motion for JNOV.[9]
 
 II.
 
 19
 Navistar also claims that it was entitled to JNOV because plaintiff's evidence that the accident was survivable absent the alleged defect was incompetent. The trial judge is vested with broad discretion to determine the admissibility of expert testimony. Absent an abuse of discretion, we are inclined to leave such evidentiary rulings intact. Mitroff v. Xomox Corp., 797 F.2d 271, 275 (6th Cir.1986).
 
 
 20
 At trial, Bruce Enz, an accident reconstruction expert[10] was asked:
 
 
 21
 Do you have any opinion whether David Ault would have survived this accident if his breathing had not been impinged by the collapse of the roof you just described?
 
 
 22
 (App. 268). Navistar objected to this question as calling for medical testimony beyond any purported expertise of the witness. The plaintiff's counsel responded that Enz, relying on his own experience and the lack of other injuries to Ault, would testify that absent the roof collapse, it is unlikely that Ault would have sustained other significant injuries. The court allowed the question, to which Enz responded:
 
 
 23
 Based upon my experience in rollover type of accidents where there is not traumatic injury, that's death threatening and there is no impingement of breathing mechanism of the occupants, they survive, yes, sir.
 
 
 24
 (App. 269). Navistar claims that Enz was not at all qualified to offer medical testimony on human impact tolerance and that the above question posed to Enz called for precisely such testimony. Navistar claims that, in second collision cases, two types of expertise are needed to help apportion injuries; medical testimony on human impact tolerance and testimony on occupant kinematics (the movement of occupants within a vehicle) and biomechanics pertinent to accident reconstruction. Navistar concedes that Enz was qualified to testify on accident reconstruction but challenges Enz's expertise to testify, from a medical standpoint, as to injuries Ault would have sustained in the accident had the roof not collapsed. As such, Navistar claims that plaintiff failed to sustain her claim of enhanced injury based on the second collision doctrine. See Yetter v. Rajeski, 364 F.Supp. 105 (D.N.J.1973) (plaintiff's proof of enhanced injury in wrongful death action insufficient when only evidence consisted of engineer's testimony without medical testimony about human body's impact tolerance).
 
 
 25
 Plaintiff vigorously claims that the question posed to Enz was not a medical question, did not call for medical expertise, and did not elicit a medical opinion. Examining the testimony in context, we agree. Enz's testimony included reconstruction of the accident, explanations of which part of the vehicle hit the ground first, which part of the roof failed during the accident, the distance the vehicle slid during the accident, and the movement of Ault's body during the accident. He was questioned as to the mechanical basis for Ault's death, given the coroner's testimony regarding Ault's cause of death. He attributed the compression noted in the coroner's report to Ault's impingement by a portion of the roof. It was at this point that the challenged testimony occurred. Enz's response provided a general, almost statistical opinion, based on his experience with roll-over accidents, that absent death threatening traumatic injury, including impingement of one's breathing apparatus, roll-over accident victims generally survive. His response was based on his expertise in similar accidents and derived from evaluations of vehicle movement during accidents, occupant movement during accidents and from the assessment of the forces that would have been brought to bear on Ault had a defect-free roof not impinged his breathing apparatus. We find that Enz's testimony offered little more than the obvious--had the roof not impinged Ault's breathing, he, like other roll-over accident victims not subjected to life threatening injury, probably would have survived. It was the coroner who determined that Ault's death was due to compression induced asphyxiation. Enz merely pinpointed the source of the compression.[11]
 
 
 26
 Navistar had every opportunity to demonstrate that the forces of the accident or Ault's medical condition or injuries were such that even a defect-free roof would not have saved him. In fact, Navistar did attempt to emphasize the extent of force involved in the accident such that perhaps, no roof would have offered adequate protection. Again, these are considerations for the jury. Moreover, even if the court's admission of this evidence was erroneous, the error would have been harmless because there was ample evidence for the jury to have determined that absent the collapsed roof, Ault would have survived. See Sours v. General Motors Corp., 717 F.2d at 1522-23 (evidentiary error is harmless when other substantial evidence supports jury verdict).
 
 III.
 
 27
 We also reject Navistar's claim that the district court abused its discretion in denying Navistar's motion for a new trial. Although Navistar claims that the verdict is against the weight of the evidence, we disagree. The jury was presented with competing evidence as to the availability of an alternative feasible design for the Transtar roof. Additionally, the jury was presented with competing evidence as to whether plaintiff sufficiently established liability for enhanced injuries in a second collision case. The jury was instructed as to the proper standard for evaluating the competing evidence, weighed the evidence, and rendered a decision that we, after comparing opposing proofs, cannot say is against the weight of the evidence. Accordingly, we find no abuse of discretion in the district court's refusal to grant Navistar a new trial.
 
 IV.
 
 28
 Finally, we consider plaintiff's cross-appeal that the court erred in denying her motion for prejudgment interest.[12] We note that in diversity cases, the forum state's law regarding prejudgment interest controls. Rhea v. Massey-Ferguson, Inc., 767 F.2d 266, 270 (6th Cir.1985). In Ohio, prejudgment interest is governed by Ohio Rev.Code Ann. Sec. 1343.03 (Supp.1988), which provides in pertinent part:
 
 
 29
 (A) In cases other than those provided for in sections 1343.01 and 1343.02 of the Revised Code, when money becomes due and payable upon any bond, bill, note, or other instrument of writing, upon any book account, upon any settlement between parties, upon all verbal contracts entered into, and upon all judgments, decrees, and orders of any judicial tribunal for the payment of money arising out of tortious conduct or a contract or other transaction, the creditor is entitled to interest at the rate of ten per cent per annum, and no more, unless a written contract provides a different rate of interest in relation to the money that becomes due and payable, in which case the creditor is entitled to interest at the rate provided in that contract.
 
 
 30
 (B) Except as provided in divisions (C) and (D) of this section, interest on a judgment, decree, or order for the payment of money rendered in a civil action based on tortious conduct, including but not limited to a civil action based on tortious conduct that has been settled by agreement of the parties, shall be computed from the date the judgment, decree, or order is rendered to the date on which the money is paid.
 
 
 31
 (C) Interest on a judgment, decree, or order for the payment of money rendered in a civil action based on tortious conduct and not settled by agreement of the parties, shall be computed from the date the cause of action accrued to the date on which the money is paid, if, upon motion of any party to the action, the court determines at a hearing held subsequent to the verdict or decision in the action that the part required to pay the money failed to make a good faith effort to settle the case and that the party to whom the money is to be paid did not fail to make a good faith effort to settle the case.
 
 
 32
 * * *
 
 
 33
 * * *
 
 
 34
 The availability of prejudgment interest in section 1343.03(C) turns on whether the party liable for damages failed to make "a good faith effort to settle the case." That phrase has been interpreted in Kalain v. Smith, 25 Ohio St.3d 157, 495 N.E.2d 572 (Ohio 1986), in which the court indicated that the statute requires an honest effort by all parties to settle a case and that "[t]he decision ... whether a party's settlement efforts indicate good faith is generally within the sound discretion of the trial court." Id. at 159, 495 N.E.2d at 574 (citation omitted). The Kalain court elaborated that:
 
 
 35
 A party has not "failed to make a good faith effort to settle" under R.C. 1343.03(C) if he has (1) fully cooperated in discovery proceedings, (2) rationally evaluated his risks and potential liability, (3) not attempted to unnecessarily delay any of the proceedings, and (4) made a good faith monetary settlement offer or responded in good faith to an offer from the other party. If a party has a good faith, objectively reasonable belief that he has no liability, he need not make a monetary settlement offer.
 
 
 36
 Id. In this case, the district court held a hearing on plaintiff's motion for prejudgment interest. Following its evaluation of testimony, affidavits, and exhibits, the court concluded that Navistar had a good faith, objectively reasonable belief that it had no liability. Accordingly, the court found that Navistar's offer to settle for $75,000 or the cost of the defense constituted a good faith settlement offer. (App. 29). Moreover, the court recognized the standards set forth in Kalain and concluded that although Navistar may not have cooperated fully in the discovery process, that limited lack of cooperation standing alone was insufficient to warrant an award of prejudgment interest. We note that the parties generally attempted to cooperate and accommodate each other in the discovery process of this complex case. The case was tried within eighteen months of its filing. The recognized isolated instances evidencing a lack of cooperation in discovery in this case are insufficient to persuade us that the district court abused its discretion in denying plaintiff's motion for prejudgment interest. Accordingly, the district court's ruling on this issue was correct.
 
 
 37
 AFFIRMED.
 
 
 
 [1]
 Navistar was formerly known as International Harvester Company and is based in Illinois
 
 
 [2]
 Plaintiff's negligence and breach of warranty claims were not presented to the jury
 
 
 [3]
 Generally, under the second collision doctrine, manufacturers are only liable for enhanced or aggravated injuries attributable to the alleged product defect and plaintiffs must establish that the design defect caused the enhanced injuries. Huddell v. Levin, 537 F.2d 726, 738 (3d Cir.1976). See generally Annotation, Products Liability: Sufficiency of Proof of Injuries Resulting From "Second Collision", 9 A.L.R. 4th 494 (1981)
 
 
 [4]
 In Huddell, the court of appeals had no New Jersey precedent to guide it. Therefore, the court had to predict how the New Jersey Supreme Court would assess the liability of an automobile manufacturer for the design of a head restraint implicated in the fatal injuries of a plaintiff's decedent in a wrongful death case
 
 
 [5]
 In Fox, the court of appeals concluded that if called upon to consider it, Wyoming courts probably would adopt the rule of second collision liability
 
 
 [6]
 We also note that despite plaintiff's allegations of damages for Ault's conscious pain, suffering, fright, and mental anguish, only the wrongful death claim was submitted to the jury because the trial court found no evidence of Ault's conscious pain and suffering
 
 
 [7]
 Copp attended the Edison Institute of Technology (EIT), a part of the Ford Foundation in Dearborn, Michigan, before enlisting in the air force. While at EIT, Copp specialized in mechanical engineering. (App. 357). While studying, Copp worked in the Ford foundry, machine shop, motor line, and in design. Following his air force duty, Copp worked for Ford in various high level positions involving research and design in engineering cars and trucks
 
 
 [8]
 Navistar conceded at trial that there is no generally accepted test to evaluate roll-over strength
 
 
 [9]
 Our conclusion on this issue makes it unnecessary to determine whether, in this case, plaintiff is excused from proving the availability of an acceptable alternative design. In Leichtamer v. American Motors Corp., No. 5223, slip op. at 28 (July 30, 1980), at the court of appeals level, the court excused plaintiffs from such proof when a conscious choice not to design for forward pitch overs was made by the manufacturer. Plaintiff here claims that Navistar's failure to design for foreseeable roll-over accidents excuses plaintiff from establishing the availability of an acceptable alternate design
 
 
 [10]
 Enz, a former police officer, served as head field engineer for a multi-disciplinary accident investigation team at Dynamic Science, Inc. His work involved determining the mechanical source of occupant injury in accidents. He has extensive experience in investigating accidents including roll-over accidents involving heavy trucks. Enz personally examined the vehicle involved in Ault's accident
 
 
 [11]
 Although the testimony at issue may successfully have been challenged on other grounds, we limit our analysis to Navistar's claim that the testimony should not have been received because it consisted of medical testimony beyond Enz's field of expertise
 
 
 [12]
 In her cross-appeal, plaintiff also challenged the court's admission of testimony indicating that Ault was not wearing a seat belt at the time of his accident and the court's refusal to charge the jury on the "consumer expectation" standard of design defect. In her brief, however, plaintiff expressly limits her cross-appeal to the prejudgment interest issue. (Brief of plaintiff-appellee/cross-appellant at 46)