37 F.3d 1181
 24 UCC Rep.Serv.2d 1106
 Audrey JORDAN, Individually and as Administratrix of the
Estate of George A. Jordan, Sr., on Behalf of the
Surviving Relatives of George A. Jordan,
Sr., Plaintiff-Appellant, Cross-Appellee,
v.
PACCAR, INC. d/b/a Kenworth Truck Company,
Defendant-Appellee, Cross-Appellant.
 Nos. 93-3301, 93-3361.
 United States Court of Appeals,
Sixth Circuit.
 Argued June 23, 1994.
Decided Oct. 17, 1994.
 
 Howard A. Schulman (argued and briefed), Schulman, Schulman & Meros, Cleveland, OH, for plaintiff-appellant cross-appellee.
 Harry T. Quick (argued and briefed) and Lawrence K. English, Benesch, Friedlander, Coplan & Aronoff, Cleveland, OH, for defendant-appellee cross-appellant.
 Before: KEITH, BOGGS, and BATCHELDER, Circuit Judges.
 BOGGS, Circuit Judge.
 
 
 1
 This diversity action charges wrongful death resulting from product liability. Plaintiffs claimed that the death of George Jordan, Sr., in a traffic accident was proximately caused by Defendant's allegedly defective design of a tractor-cab roof. The jury found for Defendant. Plaintiffs appeal from the trial judge's refusal to instruct the jury on two alternate theories of liability that Plaintiffs proposed. For the reasons set forth below, we affirm.
 
 
 2
 * Paccar, Inc. ("Paccar"), a Delaware corporation with principal business offices in the state of Washington, designs, manufactures, and sells "Kenworth" tractors and trucks. Their Kenworth W900B tractor is designed with a driver's-cab roof that is distinctive because it is made of one solid piece of fiberglass, with no steel or metal reinforcement. Paccar distributed a sales brochure, in which the fiberglass roofs were described as "strong, light, leakproof," and the trucks as "rock-solid."
 
 
 3
 George A. Jordan, Jr., purchased a Kenworth W900B tractor as a Christmas present for his father. He bought the vehicle from a dealership in Richfield, Ohio. The Jordans are all citizens of Pennsylvania. George, Sr. ("Decedent"), was a professional truck driver and had an Interstate Commerce Commission certificate to tow wrecked trucks and tractors. During his years in the business, he had seen first-hand that Kenworth one-piece-fiberglass roofs tend to tear into shreds when those vehicles roll completely over.
 
 
 4
 In April 1988, Decedent departed on a job, hauling 36,000 pounds of reactivated charcoal in a van-type trailer that he loaded in Beaver Falls, Pa. Ten miles across the border into New York State, Decedent had a fatal accident as he unsuccessfully attempted to negotiate a curving off-ramp. The trailer struck the guardrail and toppled over, tearing out more than 100 feet of guardrail and a number of guardrail posts. As it twisted and swung around, it pulled the tractor with it. The tractor rolled over, plummeting twenty-nine feet. Dr. Guenther, an accident expert, testified that the tractor hit the ground below with between 237,400 and 474,800 pounds of force. The one-piece fiberglass cab roof tore to shreds. Decedent was thrown from the vehicle and was found dead, apparently from chest injuries sustained when a guardrail and a concrete parapet wall intruded into the driver's cab. Defendant maintains that the decedent would have died even if the cab roof held firm throughout the accident because of the force of the crash into the ground, the intrusion of objects through the cab's broken windshield, and the impact on Decedent's unbelted body when he was thrown from the vehicle.
 
 
 5
 Audrey Jordan, the widow and administratrix of Decedent's estate, brought this diversity action under the Ohio Product Liability Law, Ohio Rev.Code Ann. Secs. 2307.71-.80, suing Paccar because of its allegedly dangerous cab-roof design. The case was tried to a jury. All parties agreed that the jury was correctly instructed on the "Risk-Benefit Theory" of product liability, which holds that a tort defendant is not liable for risks inherent in a product's manufacture or design if the benefits outweigh the risks. At trial's end, the judge submitted three interrogatories to the jurors. In reply to the first interrogatory, the jury found that Defendant's tractor was not defectively designed, thus mooting the other two questions.[1]
 
 II
 
 6
 Plaintiffs requested jury instructions on the "Consumer-Expectation Theory" of product liability. Under this theory, a defendant is liable in a product-liability action if a plaintiff can show that a product is "more dangerous than an ordinary consumer would expect when used in an intended or reasonably foreseeable manner." Leichtamer v. American Motors Corp., 67 Ohio St.2d 456, 424 N.E.2d 568, 570-71 (1981) (emphasis added); Ohio Rev.Code Ann. Sec. 2307.75(A)(2). The analysis turns on what "would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics." Id. at 465, 424 N.E.2d at 576 (emphasis added).
 
 
 7
 In Cremeans v. International Harvester Co., 6 Ohio St.3d 232, 452 N.E.2d 1281 (1983), the Ohio Supreme Court clarified the state standard that a product-liability plaintiff in Ohio can win an action under "a single, two-pronged test for determining whether a product design is in a defective condition," id. at 234, 452 N.E.2d at 1284, either by prevailing on the risk-benefit test or on the consumer-expectation test. That disjunctive standard was codified in 1987 by the Ohio legislature. Ohio Rev.Code Ann. Sec. 2307.75(A).
 
 
 8
 In this case, Paccar argued that a "consumer-expectation test" instruction was irrelevant because Decedent was an experienced trucker who had hauled many wrecked Kenworth trucks in his time, enough to expect the dangers inherent in the one-piece fiberglass roof. Plaintiffs responded that, under Ohio law, the standard for gauging "consumer expectation" is not based on what the deceased expert would have expected but on whether ordinary consumers are aware of the Kenworth roof's alleged dangers. Nevertheless, the district judge refused to charge the jury under the consumer-expectation test.
 
 
 9
 While Ohio law, under which this diversity case was tried, does provide product-liability plaintiffs with alternative theories of proving liability, Ohio also recommends that judges exercise discretion when there seems to be no logical reason to charge a jury on the elements of the "consumer-expectation test":
 
 
 10
 1. GENERAL. The manufacturer of a product is liable for harm caused by a defect in design or formulation when:
 
 
 11
 (Use appropriate alternative[s]
 
 
 12
 (A) RISK BENEFIT TEST. The product left the control of its manufacturer, and the foreseeable risks associated with its design or formulation exceeded the benefits associated with that design or formulation;
 
 
 13
 (or)
 
 
 14
 (B) CONSUMER EXPECTATION TEST. It is more dangerous than an ordinary consumer would expect when used in an intended or reasonably foreseeable manner.
 
 
 15
 Ohio Model Jury Instruction 351.09. Under the facts of this case, we hold that the risk-benefit test subsumed the consumer-expectation test. At oral argument on appeal, Plaintiff's counsel, after asserting that certain trucks made in Europe could have protected Decedent from the consequences of this tragic accident, conceded that Decedent would not have survived this accident in any American-made truck. There is no evidence to support the notion that an ordinary American consumer who purchases an American-made truck would expect that it will exceed the impact-resistance capabilities of all other trucks made in the United States, and will instead meet the specifications of some European manufacturers. Nor was it necessary for the judge to ask the jury whether the ordinary consumer would expect to survive a twenty-nine-foot fall in a tractor-trailer, crashing into the ground with a force between 237,400 and 474,800 pounds, coming after the trailer has just torn through more than 100 feet of guardrail and a number of guardrail posts.[2]
 
 
 16
 Furthermore, it is a "well-settled rule that an erroneous ruling which relates to the substantial rights of a party is ground for reversal unless it affirmatively appears from the whole record that it was not prejudicial." McCandless v. United States, 298 U.S. 342, 347-48, 56 S.Ct. 764, 766, 80 L.Ed. 1205 (1936); Fed.R.Civ.P. 61. We hold that, even if the district judge erred by refusing to instruct the jury on the "consumer-expectation test," such error was harmless because the jury could not have found, on this record, that an ordinary consumer of this product could expect to survive a crash like the one in this case.
 
 III
 
 17
 Plaintiffs also requested instructions, pursuant to Ohio Rev.Code Ann. Sec. 2307.77, that would have allowed the jury to hold the defendant liable if it found that Defendant's product failed to comport with representations it had made concerning its safety. Plaintiffs cited a Kenworth sales brochure that describes the fiberglass roofs as "strong, light, leakproof," and the trucks as "rock-solid." The court refused to present Plaintiffs' proposed instruction and liability theory to the jury.
 
 
 18
 Ohio law distinguishes between serious representations and commercial puffery. "[A]n affirmation merely of the value of the goods or a statement purporting to be merely the seller's opinion or commendation of the goods does not create a warranty." Ohio Rev.Code Ann. Sec. 1302.26(B). "[C]ommon experience discloses that some statements or predictions cannot fairly be viewed as entering into the bargain." U.C.C. Sec. 2-313(2), official comment (adopted by Ohio as commentary on Ohio Rev.Code Ann. Sec. 1302.26(B)). The published statement that a product is "rock-solid" must be regarded in context. Many enthusiastic subjective claims are made in the commercial marketplace, and many are obviously part of the commercial puffery to which ordinary consumers are inured. For example, consumers know that vehicles that are "rock-solid" will be dented by an impact that would not dent a rock. Similarly, the word "strong" is a subjective term. A fiberglass roof may be "strong" enough to withstand a hard blow, a falling tree branch, or the weight of an elephant, without being guaranteed to be indestructible. We agree with the court's reasoning and find no error, based on the facts of this case, in its refusal to charge the jury under Ohio Rev.Code Ann. Sec. 2307.77.[3]
 
 IV
 
 19
 Because Ohio does not require a mechanical instruction on all alternative tests in all product-liability cases, we AFFIRM the jury's findings for Defendant.[4]
 
 
 
 [1]
 The second interrogatory would have focused on proximate cause, asking whether the decedent would have survived the accident but for the defective design. The third interrogatory would have focused on questions concerning Plaintiff's damages
 
 
 [2]
 We stress that our holding here is based on the particular facts of this case. Thus, we reject Defendant's contention that the jury finding for Defendant under the risk-benefit test implies that it necessarily would have found for Defendant under the separate consumer-expectation test, too. See, e.g., Cunningham v. Mitsubishi Motors Corp., No. C-3-88-582, slip op. at 2 (S.D.Ohio June 16, 1993), appeal docketed, No. 93-3756 (6th Cir. July 14, 1993) (jury finding for Defendant under risk-benefit test but for Plaintiff under consumer-expectation test in product-liability/wrongful-death action arising from deadly vehicular accident)
 
 
 [3]
 Before trial, the court denied Plaintiffs' motion in limine, filed under Ohio Rev.Code Ann. Sec. 4513.263(G), asking that Defendant be prohibited from introducing evidence that Decedent's seatbelt was not fastened at the time of the accident. We need not reach this question because, based on the facts in the record before us, we hold that the jury would have found for Defendant regardless of whether it had been informed that Decedent had not fastened his safety belt
 
 
 [4]
 Because we affirm the jury's finding for Defendant in this tragic case, we need not consider Defendant's strong contention, based on the fact that the Ohio dealership was not named as a defendant in this action and on the principle of lex loci delicti, that the trial judge erred in ruling that the case should be governed by Ohio law rather than New York law